

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-5-1994

# Bathgate, et al v. Barlow, et al.

Precedential or Non-Precedential:

Docket 93-5328

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Bathgate, et al v. Barlow, et al." (1994). *1994 Decisions.* Paper 9.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/9

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 93-5328 and 93-5507


FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR THE FIRST NATIONAL BANK OF
TOMS RIVER, NEW JERSEY

v.

LAWRENCE E. BATHGATE, II; NOVASAU ASSOCIATES, A NEW JERSEY
LIMITED PARTNERSHIP; NEW NAS, INC.; T. PAMELA BATHGATE; 54 BUENA
VISTA ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP; TUSCOL
DEVELOPMENT, INC., A NEW JERSEY CORPORATION; OLD MONMOUTH
ASSOCIATES, A NEW JERSEY PARTNERSHIP; AIRPORT ASSOCIATES, A NEW
JERSEY PARTNERSHIP; GERALD A. GURA; THE CLUB AT WEST DEPTFORD, A
LIMITED PARTNERSHIP, A NEW JERSEY LIMITED PARTNERSHIP; STATE OF
NEW JERSEY; COLUMBIA SAVINGS AND LOAN ASSOCIATION; ASSET RECOVERY
MANAGEMENT, INC.; WILLIAM BOWMAN ASSOCIATES, INC.; NATIONAL
WESTMINSTER BANK NJ, SUCCESSOR TO FIRST JERSEY NATIONAL
BANK/SOUTH.

LAWRENCE E. BATHGATE, II; NOVASAU ASSOCIATES; NEW NAS, INC.; 54
BUENA VISTA ASSOCIATES, A NEW JERSEY LIMITED PARTNERSHIP; TUSCOL
DEVELOPMENT, INC., A NEW JERSEY CORPORATION; OLD MONMOUTH
ASSOCIATES, A NEW JERSEY PARTNERSHIP

                                        Third-Party Plaintiffs

v.


WILLIAM BARLOW; JOHN C. FELLOWS, JR.; EBERT L. HALL; JOSEPH P.
IARIA; DAVID E. JOHNSON, JR.; IRENE F. KRAMER; JACQUELINE F.
PAPPAS; JOHN F. RUSSO; LEONARD G. LOMELL; OFFICE OF THE
COMPTROLLER OF THE CURRENCY; JOHN MCDOUGAL

                                        Third-Party Defendants

(Trenton New Jersey District Civil No. 91-02779)

FEDERAL DEPOSIT INSURANCE CORPORATION,
AS RECEIVER FOR THE FIRST NATIONAL BANK OF TOMS RIVER

v.

NLA ASSOCIATES LIMITED PARTNERSHIP, A NEW JERSEY LIMITED
PARTNERSHIP; LGP-I LIMITED PARTNERSHIP, A NEW JERSEY LIMITED
PARTNERSHIP; LGP-I CAPITAL CORP., A NEW JERSEY CORPORATION; NEW
NAS, INC.; LAWRENCE E. BATHGATE, II; ALAN B. LANDIS; NOVASAU
ASSOCIATES, A LIMITED PARTNERSHIP, A NEW JERSEY LIMITED
PARTNERSHIP
(Trenton New Jersey District Civil No. 91-02780)

Lawrence Bathgate, II; Novasau Associates, Limited Partnership;
New Nas, Inc.; 54 Buena Vista Associates; Tuscol Development,
Inc.; and Old Monmouth Associates (the Bathgate defendants),

Appellants

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. Nos. 91-02779 and 91-02780)


Argued March 25, 1994

BEFORE:  GREENBERG, COWEN, and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Filed:  May 5, 1994)

Paul R. Rosen (argued)
Bruce S. Marks
Spector, Gadon & Rosen, P.C.
1700 Market St.
29th Floor
Philadelphia, PA 19103

<u>Attorneys for Appellants</u>

Ann S. Duross
Assistant General Counsel
Colleen B. Bombardier
Senior Counsel
John P. Parker (argued)
Senior Attorney
Federal Deposit Insurance
Corporation
550 17th Street, N.W.
Washington, D.C. 20429

Craig M. Lessner

Michael O'B. Boldt
Bourne, Noll & Kenyon
382 Springfield Ave.
Summit, N.J. 07901

Attorneys for Appellee
Federal Deposit Insurance
Corporation

Joel M. Leifer (argued)
Mark H. Moore
Daniel Hume
Hertzog, Calamari, & Gleason
100 Park Ave.
New York, N.Y. 10017

Attorneys for Appellees
William Barlow, John C.
Fellows, Jr., Ebert L.
Hall, Joseph P. Iaria,
David E. Johnson, Jr.,
Irene F. Kramer, Jacqueline
F. Pappas, and Leonard G.
Lomell

OPINION OF THE COURT


GREENBERG, Circuit Judge.


I.      FACTUAL AND PROCEDURAL HISTORY

        A.   Factual History

        Lawrence E. Bathgate, II, borrowed over $19 million from the First National Bank of Toms River, N.J. (the Bank) between 1986 and 1990.  These loans were evidenced by the following seven promissory notes:

        1.    a $185,000 promissory note secured by a 1985 Rolls Royce;

2. a $1,620,000 promissory note secured by a mortgage on property in Mantoloking, N.J.;

3. a $2.0 million promissory note secured by mortgages on two properties located on Buena Vista Drive in Rumson, N.J.;

4. a $4.0 million "Line of Credit Master Note" payable on demand and secured by assignments of a $1.6 million note and mortgage executed by Airport Associates and a $6,280,000 note and mortgage executed by Gerald A. Gura;

5. a $187,500 promissory note;

6. an $11.5 million line of credit secured by

(a) second mortgages, security agreements, and assignments of rent on two properties located on Buena Vista Drive in Rumson, N.J.;

(b) a second mortgage, security agreement, and assignment of rent on property located in Mantoloking, N.J.;

(c) a mortgage, security agreement, and assignment of rent on property located in Howell, N.J., executed by Tuscol Development, Inc.;

(d) a mortgage, security agreement, and assignment of rent on a second piece of property in Howell, N.J., executed by Old Monmouth Associates;

(e) a collateral assignment of partnership interest on properties located in Freehold, N.J., and Jackson, N.J.;

(f) a collateral assignment of partnership interest in Vintage-Pointe Associates;

4

(g)  a collateral assignment of a partnership interest in Bedford Village Associates; and

(h)  a collateral assignment of a partnership interest by Novasau Associates in itself and in NLA Associates; and

7.  a $250,000 promissory note payable on demand. Federal Deposit Ins. Corp. v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 2-3 (D.N.J. Mar. 18, 1993) (see Bathgate defendants' App. I at 19-20).

In 1989, Bathgate also executed an unconditional guaranty securing 25 percent of a $1.8 million "Agreement for Commercial Letter of Credit" between NLA Associates, LGP-I Limited Partnership, and Novasau Associates and the Bank.  Id. at 3 (see Bathgate defendants' App. I at 20).[0]  Alan B. Landis secured the remainder of this obligation to the Bank.

Bathgate defaulted on the $11,500,000 note by failing to make the required monthly and quarterly payments beginning on October 1, 1990.  On February 15, 1991, Bathgate also defaulted on the $187,500 note by failing to make the required monthly payment.

On February 26, 1991, the Bank wrote a 13-page letter to Bathgate regarding the $11,500,000 note, the $187,500 note,

---

[0]Pursuant to the "Agreement for Commercial Letter of Credit," NLA Associates, LGP-I Limited Partnership, and Novasau Associates agreed to pay the Bank on demand such amounts as the Bank paid to Chase Manhattan Bank pursuant to a $1,800,000 letter of credit issued by the Bank in favor of Chase.  NLA also executed an undated demand promissory note in the amount of $1,800,000.  The Bank advanced $1,688,178 under the terms of the letter of credit.

5

the $4,000,000 note, the $250,000 note, and the $1,800,000 unconditional guaranty.  See Bathgate defendants' App. II at 629. This letter is at the heart of this action.  The letter begins by stating that the Bank "has agreed to modify and consolidate" these obligations, and the majority of the letter details the terms and conditions of the modification.  Id.  The letter was signed by William Carlough, Senior Vice President, and indicated that he sent copies to Douglas Johnson, the Bank's President and CEO, and Charles R. Berman, an attorney at Bourne, Noll & Kenyon. Id. at 642.

The following are the most significant provisions of the letter: (1) the "commitment" was subject to Bathgate's "acceptance and return to the Bank, fully executed, by 2/26/91," id. at 641; (2) the "commitment shall expire and shall be of no further effect if the transactions contemplated by this commitment are not closed by 4/1/91," id.; (3) the "bank shall be represented in this transaction by the firm of Bourne, Noll & Kenyon, . . . which will prepare all documents in this transaction," id. at 637; and (4) "[t]he Borrower and the Bank shall execute and deliver all documentation required by the Bank in connection with the issuance of the Loan and the Collateral[,]" id.  The February letter also identifies specific documents Bathgate was to furnish to the Bank counsel prior to the closing of the transactions contemplated by the letter, id. at 635-37 (see also Bathgate defendants' App. II at 603-05), 639-

6

40,[0] and states that Bathgate must provide "[s]uch other information, documents, certificates, financial statements or opinions reasonably required by the Bank and its counsel," id. at 637.

Though Bathgate executed and delivered the February letter to the Bank on February 26, 1991, the proposed restructured loan never was closed. In a letter dated April 11, 1991, the Bank formally demanded payment of two notes on which Bathgate had failed to make payments (the $11,500,000 note and

---

[0]These include the following items: (1) title insurance policies insuring the Bank's lien interest in the mortgaged properties; (2) insurance policies against hazards on the mortgaged properties; (3) insurance policies against floods on any areas designated as flood hazard areas; (4) proof that the mortgaged properties are not subject to the Environmental Cleanup Responsibility Act or other applicable environmental law and that all taxes and assessments against the properties have been paid; (5) a survey of each mortgaged property; (6) an "approved attorney" letter from a title insurance company indemnifying the Bank against fraud or failure by the closing attorney to comply with the closing instructions; (7) state and county UCC searches regarding Bathgate and any entities in which Bathgate has assigned his interest or which own collateral; (8) copies of "all partnership agreements, charter documents and other organizational documents or agreements of entities in which . . . [Bathgate] has assigned interest or delivering or owning [c]ollateral in connection with the [l]oan"; (9) "[c]orporate resolutions adopted by the Board of Directors of Tuscol Development, Inc. and New Nas, Inc. – authorizing the issuance of applicable [c]ollateral documents in connection with the [l]oan"; (10) "[w]ritten consent of all partners of each partnership which grants or modifies a mortgage as collateral for the [l]oan or in connection with which the [b]orrower has granted a collateral assignment of his partnership interest, if required by the partnership agreement"; (11) affidavits with respect to environmental matters; (12) good standing certificates and corporate status searches with respect to Tuscol Development, Inc. and New Nas, Inc.; and (13) appraisals on the mortgaged property paid for by Bathgate. See App. II at 603–05, 635–37, 639–40.

7

the $187,500 note) and three notes payable on demand (the $4,000,000 note, the $250,000 note, and the $1,800,000 note). Bathgate defendants' App. I at 310.

On April 8, 1991, Bathgate failed to make a required payment on the $185,000 note. In a letter dated May 1, 1991, the Bank formally demanded payment of the $185,000 note, and in a second letter dated May 1, 1991, the Bank formally demanded payment of the $1,800,000 note by Bathgate, NLA, and Landis. Bathgate failed to make the payments demanded on these six notes, and NLA and Landis failed to make the payments demanded of them on the $1,800,000 note.

### B. Procedural History

On May 3, 1991, the Bank filed two suits in the Superior Court of New Jersey to collect the amounts outstanding under the six notes for which Bathgate had failed to make demanded payments: (1) the $11,500,000 note; (2) the $187,500 note; (3) the $4,000,000 note; (4) the $250,000 note; (5) the $185,000 note; and (6) the $1,800,000 note. In one of the state court actions, the Bank sought judgment against Landis, NLA Associates Limited Partnership, LGP-I Limited Partnership, and LGP-I Capital Corporation (the Landis defendants), and against Bathgate, Novasau Associates, and New Nas, Inc. for the amount outstanding under the $1,800,000 note. In the other state court action, the Bank sought judgment against Bathgate and Novasau Associates for the amounts outstanding under: (1) the $11,500,000

note; (2) the $187,500 note; (3) the $4,000,000 note; (4) the $250,000 note; and (5) the $185,000 note.

On May 22, 1991, the Bank was declared insolvent and the FDIC was appointed as the Bank's receiver. The notes in question were sold to an acquiring bank, but then repurchased by the FDIC pursuant to a clause in the Purchase and Assumption Agreement authorizing the acquiring bank to "put" back to the FDIC any adversely classified loans.

In June 1991, Bathgate defaulted on the $2,000,000 note and in July 1991, he defaulted on the $1,620,000 note. In a letter dated September 13, 1991, the FDIC informed Bathgate that he had defaulted on these notes and that it had accelerated the maturity of the notes and was demanding full payment of the principal, interest, and other sums outstanding. Bathgate did not make these payments.

On June 20, 1991, the FDIC removed the state court actions to the district court, which consolidated them on November 8, 1991. The FDIC was substituted for the Bank as plaintiff. Subsequently, the FDIC filed an amended complaint adding T. Pamela Bathgate, 54 Buena Vista Associates, Tuscol Development, Inc., Old Monmouth Associates, Airport Associates, Gerald A. Gura, the Club at West Deptford, and the State of New Jersey as defendants.

In September 1992, the Bathgate defendants (Bathgate, Novasau Associates Limited Partnership, New Nas, Inc., 54 Buena Vista Associates, Tuscol Development, Inc., and Old Monmouth Associates) filed a third-party complaint against the Office of

9

the Comptroller of the Currency (OCC), John McDougal, an OCC employee, and nine directors or officers of the Bank, William Barlow, John C. Fellows, Jr., Ebert L. Hall, Joseph P. Iaria, David E. Johnson, Jr., Irene F. Kramer, Jacqueline F. Pappas, John F. Russo, and Leonard G. Lomell.  The district court dismissed the third-party complaint by oral order on March 1, 1993.  See Bathgate defendants' App. III at 1007-36 (transcript of proceedings).  The Bathgate defendants have not attempted to appeal from this order.  However, they did file a motion for leave to file an amended third-party complaint.  Subsequently, the Bathgate defendants voluntarily dismissed their third-party complaint against the OCC and McDougal, and the district court denied their motion for leave to amend the remaining third-party claims, holding that their proposed amendments would be futile. FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 5 (D.N.J. July 19, 1993) (see Bathgate defendants' App. III at 1041).

The Bathgate defendants raised a number of defenses against the FDIC's claims including: (1) setoff and accord and satisfaction; (2) breach of condition; (3) failure to perform a condition precedent; (4) estoppel; (5) cancellation of debt; (6) failure to state a claim upon which relief can be granted; (7) fraud; (8) laches; (9) payment; (10) prevention of performance; and (11) unclean hands.  FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 10 n.2 (D.N.J. Mar. 18, 1993) (see Bathgate defendants' App. I at 27).  They also advanced the following counterclaims: (1) breach of contract, and

10

the duty of good faith and fair dealing; (2) violation of the New Jersey Consumer Fraud Act; (3) trade libel/slander of credit; (4) slander of title; (5) unlawful interference with prospective economic advantage; (6) malicious and egregious breach of contract; (7) abuse of process; and (8) fraud and negligent misrepresentation. Id. at 10-11 n.2 (see Bathgate defendants' App. I at 27-28).

On March 18, 1993, the district court granted summary judgment in favor of the FDIC both on its claims against the Bathgate defendants and on the Bathgate defendants' claims against it. FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order (D.N.J. Mar. 18, 1993) (see Bathgate defendants' App. I at 18-35). The district court held that the D'Oench Duhme doctrine and 12 U.S.C. § 1823(e) barred the defenses raised by the Bathgate defendants because they were based on an alleged oral agreement to extend the April 1 closing date for the transactions contemplated in the Bank's February letter to Bathgate. Id. at 12-17 (see Bathgate defendants' App. I at 29-34). The district court also held that D'Oench Duhme and section 1823(e) barred the majority of the counterclaims raised by the Bathgate defendants. Id. at 16-17 (see Bathgate defendants' App. I at 33-34).

With regard to the Bathgate defendants' claims that the default letters, legal complaints and certain statements to the media allegedly issued by the Bank constitute libel and slander, the district court held: (1) that the default letters did not contain false statements since the closing date in the February

11

letter had passed and thus Bathgate was actually in default; (2) that the Bank's legal complaints were privileged from slander and defamation actions; and (3) that the Bathgate defendants "failed to designate specific facts that raise a material issue for trial regarding . . . [the Bank's] alleged republishing of the default letters and complaints to the press." Id. at 16 (see Bathgate defendants' App. I at 33). Finally, with regard to the counterclaim for tortious interference, the district court held that the Bathgate defendants "failed to raise an adequate response to the FDIC's argument that the claim is barred under the D'Oench, Duhme doctrine and § 1823(e)." Id.[0]

---

[0]The district court also granted summary judgment in favor of the FDIC against Airport Associates, but later vacated the order based on a settlement agreement between the FDIC and Airport Associates. The court denied without prejudice the FDIC's motion for summary judgment against the Landis defendants based on a forbearance agreement between the FDIC and these defendants. FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 17 (D.N.J. Mar. 18, 1993) (see Bathgate defendants' App. I at 34).

On May 10, 1993, the district court denied Bathgate's motion for reconsideration of

March 18, 1993 order.  FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated),

Memorandum and Order (D.N.J. May 10, 1993) (see Bathgate defendants' App. I at 39-4

The Bathgate defendants then filed a notice of appeal from this order denying their

for reconsideration.  This appeal (Bathgate I) was docketed at No. 93-5328.  Bathga

was submitted to a panel of this court for possible dismissal on jurisdictional gro

August 16, 1993.

Meanwhile, on August 5, 1993, the district court entered an order and fin

judgment of foreclosure, FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated),

and Final Judgment of Foreclosure and on Contract in Favor of Plaintiff (D.N.J. Aug

1993) (see third-party defendants' Supp. App. at 16-36), and on August 18, 1993, th

Bathgate defendants filed a second appeal.  This second appeal (Bathgate II) was do

at No. 93-5507.[0]

By order entered October 6, 1993, we dismissed Bathgate I (No. 93-5328) f

of jurisdiction because the district court's order was not "final" as to all claims

all parties and the district court had not granted a Fed. R. Civ. P. 54(b) certific

Subsequently, the district court granted Rule 54(b) certification, and on October 1

1993, the Bathgate defendants filed a motion for reconsideration of the order dismi

Bathgate I (No. 93-5328) and for consolidation of Bathgate I (No. 93-5328) with Bat

II (No. 93-5507).  By order entered November 8, 1993, we granted the motion for

reconsideration, reinstated Bathgate I, and consolidated Bathgate I and Bathgate I

briefs filed in Bathgate II (No. 93-5507) address all the issues raised in the Bath

briefs (No. 93-5328), as well as the district court's denial of the Bathgate defend

---

[0]The FDIC filed an appeal on September 19, 1993, from an order of the district cour
entered on July 19, 1993, granting a motion by Airport Associates to enforce a sett
This appeal was docketed at No. 93-5572, but later was dismissed pursuant to Fed. F
P. 42(b) by order dated December 13, 1993.

motion for leave to amend their third-party complaint.  See Bathgate defendants' Br

n.4.

Thus, in this consolidated appeal, the Bathgate defendants are challengin

the district court's order granting summary judgment to the FDIC, FDIC v. Bathgate

Civ. No. 91-2779 (consolidated), Memorandum and Order (D.N.J. Mar. 18, 1993) (see E

defendants' App. I at 18-35), and the district court's order denying their motion f

leave to amend their third-party complaint, FDIC v. Bathgate et al., Civ. No. 91-27

(consolidated), Memorandum and Order at 5 (D.N.J. July 19, 1993) (see Bathgate defe

App. III at 1044).  We rely primarily on the Bathgate II briefs, as they address bo

issues.


II.       DISCUSSION

The district court exercised subject matter jurisdiction over the FDIC's

against the Bathgate defendants and the Bathgate defendants' claims against the FDI

pursuant to 12 U.S.C. § 1819(b).  Although the district court granted summary judgm

favor of the FDIC, both on its claims against the Bathgate defendants and Bathgate'

claims against it, the court denied without prejudice the FDIC's motion for summary

judgment against the Landis defendants based on a forbearance agreement between the

and these defendants.  FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated),

Memorandum and Order at 17 (D.N.J. Mar. 18, 1993) (see Bathgate defendants' App. I

Thus, a jurisdictional issue was created, as the district court proceedings were no

as to all parties and issues.

However, the district court granted a certification under Rule 54(b) whic

provides in pertinent part: "When more than one claim for relief is presented in an

action, . . . or when multiple parties are involved, the court may direct the entry

final judgment as to one or more but fewer than all of the claims or parties only u

express determination that there is no just reason for delay and upon an express di

14

for the entry of judgment."  We exercise plenary review over a district court's determination that a judgment is final, and then determine whether a district court abused its discretion in deciding that a judgment is "'ready for appeal.'"  Gerardi [v.] Pelullo, 16 F.3d 1363, 1368 (3d Cir. 1994) (quoting Curtiss-Wright Corp. v. General [] Electric Co., 446 U.S. 1, 8, 100 S.Ct. 1460, 1465 (1980)).  In this case, the distr[ict] court granted the Rule 54(b) certification after making the required finding "that [there] is no just reason for delay" and directing the entry of judgment.  We concur in the [] district court's determination that the judgment was final and "ready for appeal." [Thus] we have jurisdiction over the Bathgate defendants' appeal pursuant to 28 U.S.C. § 1[291.]

We exercise plenary review over the district court's grant of summary jud[gment] in favor of the FDIC.  See Petruzzi's IGA v. Darling-Delaware Co., 998 F.2d 1224, 1[230 (3d] Cir.), cert. denied, 114 S.Ct. 554 (1993); Wheeler by Wheeler v. Towanda Area Schoo[l] Dist., 950 F.2d 128, 129 (3d Cir. 1991); American Medical Imaging Corp. v. St. Paul [Fire] and Marine Ins. Co., 949 F.2d 690, 692 (3d Cir. 1991).  Thus, we apply the same sta[ndard] applied by the district court.  Petruzzi's IGA, 998 F.2d at 1230.  This standard en[titles] a movant to summary judgment "if the pleadings, depositions, answers to interrogato[ries,] and admissions on file, together with the affidavits, if any, show that there is no [] genuine issue as to any material fact and that the moving party is entitled to a ju[dgment] as a matter of law."  Fed. R. Civ. P. 56(c).

---

[0] We have held that "a claimant against a failed thrift [or other depository instit[ution] must exhaust FIRREA's administrative remedies before commencing a judicial action.'" [Rosa] Properties, Inc. v. Colonial Sav. Bank, 947 F.2d 49, 63 (3d Cir. 1991) (citing 12 U[.S.C. §] 1821(d)(13)(D)); see also FDIC v. Shain, Schaffer & Rafanello, 944 F.2d 129, 132 (3[d Cir.] 1991) (Section 1821(d)(13)(D) "expressly withdrew jurisdiction from all courts over [any] claim to a failed bank's assets that are made outside the procedure set forth in se[ction] 1821.").  In their responses to an inquiry by this court, both the Bathgate defenda[nts and] the FDIC stated that they complied fully with the the administrative procedures enu[merated] in the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA["), 12] U.S.C. § 1821(d)(3)-(d)(13).  See Bathgate defendants' Response at 4-5; FDIC Respon[se at] 6.  Thus, our jurisdiction over the Bathgate defendants' claims against the FDIC is [not in] question.

15

> [T]he moving party has the initial burden of identifying the evidence that demonstrates the absence of a genuine issue of material fact, [but] the respondent (the "non-movant") must establish the existence of each element on which it bears the burden of proof.

J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990), cert denied, 499 U.S. 921, 111 S.Ct. 1313 (1991) (citing Celotex Corp. v. Catrett, 477 U 317, 323, 106 S.Ct. 2548, 2552 (1986)). Moreover, "[w]here the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest allegations of pleadings and must do more than create some metaphysical doubt." Petruzzi's IGA, 998 F.2d at 1230. Finally, in applying this standard, "all inferen must be drawn against the movant, . . . and in favor of the nonmovant." Erie Telecommunications, Inc. v. City of Erie, 853 F.2d 1084, 1093 (3d Cir. 1988).


### A.    The FDIC's Claims Against Bathgate

The Bathgate defendants argue that there is a material dispute of fact re whether they were in "default" on the notes at issue.[0] They contend that the distr court erred in granting summary judgment to the FDIC because they provided the dist court with evidence contradicting its finding that "'since the closing date in the February commitment had lapsed, the Bathgate Defendants were in default.'" See Bat defendants' Br. at 16 (quoting at FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 16 (D.N.J. Mar. 18, 1993)). They refer to February letter the Bank issued to Bathgate as an agreement which "consolidated any payments" which were due on the notes, see Bathgate defendants' Br. at 11, and argu the Bank breached this agreement by failing to provide completed documents to Bathg April 1, 1991 "even though all required information was either in the Bank's posses would have been provided to the Bank, if requested," id. at 16. Thus, they argue t

---

[0]Bathgate individually was the principal obligor on the notes, but as a matter of convenience we sometimes refer to the Bathgate defendants collectively, inasmuch as have asserted counterclaims and a third-party complaint. Moreover, Novasau was one parties to the $1,800,000 "Agreement for Commercial Letter of Credit."

16

they were not in default as of April 1, 1991, and that "[a]ny failure subsequent to

1 to make payments on Bathgate's obligations resulted from the Bank's prior breach

devastating affect [sic] this breach had on his ability to pay," id. at 12. Howeve

we noted above, the district court held that the D'Oench Duhme doctrine and 12 U.S.

1823(e) barred the defenses raised by the Bathgate defendants in support of this th

FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 1

(D.N.J. Mar. 18, 1993) (see Bathgate defendants' App. I at 29-34).

1. Are the Bathgate defendants' defenses barred by th
D'Oench Duhme Doctrine and section 1823(e)?

(a) Defense of Breach of Agreement

The Bathgate defendants argue that the FDIC is not entitled to recover un

notes and the guaranty acquired from the Bank because the Bank breached the agreeme

embodied in its February letter to Bathgate. The district court held that D'Oench

and section 1823(e) barred the Bathgate defendants' defense of breach of agreement

the Bathgate defendants were "attempting to enforce an oral agreement to extend a c

date on a proposed loan restructuring." FDIC v. Bathgate et al., Civ. No. 91-2779

(consolidated), Memorandum and Order at 12 (D.N.J. Mar. 18, 1993) (see Bathgate

defendants' App. I at 29). The Bathgate defendants state that "[c]ontrary to the Op

[of the district court], the Bathgate Defendants are not attempting to enforce the

oral extension of the Agreement. . . . Rather, the Bathgate Defendants are attempti

enforce the alleged written agreement which the Bank breached by not preparing clos

documents and attending closing by the April 1, 1991 deadline" as required by the F

letter. See Bathgate defendants' Br. at 18-19 (citing FDIC v. Bathgate et al., Civ

91-2779 (consolidated), Memorandum and Order at 11 (D.N.J. Mar. 18, 1993) (emphasis

original)). While they claim that the Bank orally extended the closing date for th

transactions contemplated in the February letter, they contend that their argument

17

not rest on this allegation.  Accordingly, they maintain that <u>D'Oench Duhme</u> does no

their defense of breach of agreement since the February letter was neither oral nor

secret.  <u>Id</u>. at 18-20.

In <u>D'Oench, Duhme & Co.</u> <u>v.</u> <u>FDIC</u>, 315 U.S. 447, 460-62, 62 S.Ct. 676, 680-

(1942), the Supreme Court held that in an action brought by the FDIC to collect on

acquired from a bank, the debtor or maker of the note may not raise a secret agreem

a defense to the FDIC's enforcement of the note. The court based its holding on pro

of the Federal Reserve Act which "reveal[ed] a federal policy to protect [the FDIC]

and the public funds which it administers against misrepresentations as to the secu

or other assets in the portfolios of the banks which [the FDIC] . . . insures or to

it makes loans."  <u>Id</u>. at 457, 62 S.Ct. at 679.  The Supreme Court reasoned that thi

policy barred any defense based on "a scheme or arrangement whereby the banking aut

on which . . . [the FDIC] relied in insuring the bank was or was likely to be misle

<u>Id</u>. at 460, 62 S.Ct. at 681.  Thus, "[t]he rule emerging from <u>D'Oench Duhme</u> is that

agreement between a borrower and a bank which does not plainly appear on the face o

obligation or in the bank's official records is enforceable against the FDIC."  <u>Ada</u>

<u>Madison Realty & Dev., Inc.</u>, 937 F.2d 845, 852 (3d Cir. 1991).  As we stated in <u>Dad</u>

> '[f]undamentally, <u>D'Oench</u> attempts to ensure that FDIC examiners can
> accurately assess the condition of a bank based on its books.  The
> doctrine means that government has no duty to compile oral histories
> of the bank's customers and loan officers.  Nor must the FDIC retain
> linguists and cryptologists to tease out the meaning of facially-
> unencumbered notes.  Spreadsheet experts need not be joined by
> historians, soothsayers, and spiritualists in a Lewis Carroll-like
> search for a bank's unrecorded liabilities.'

<u>RTC</u> <u>v.</u> <u>Daddona</u>, 9 F.3d 312, 319 (3d Cir. 1993) (quoting <u>Bowen</u> <u>v.</u> <u>FDIC</u>, 915 F.2d 101

(5th Cir. 1990)).  Based on the purpose of the doctrine, we have held that "not onl

the existence of the agreement have to appear plainly on the face of an obligation,

the basic structure of that agreement - its essential terms - must also appear plai

the face of that obligation."  <u>Id</u>. at 319.

18

The holding in D'Oench Duhme "essentially" was codified by the Federal De

Insurance Act of 1950.  Id. at 316.  See also Carteret Sav. Bank, P.A. v. Compton,

& Sons, Inc., 899 F.2d 340, 343 (4th Cir. 1990).  The Act provides that:

> No agreement which tends to diminish or defeat the interest of the
> [FDIC] in any asset acquired by it under this section or under section
> 1821 of this title, either as security for a loan or by purchase or as
> receiver of any insured depository institution, shall be valid against
> the [FDIC] unless such agreement –
>> (1) is in writing,
>> (2) was executed by the depository institution and any
>> person claiming an adverse interest thereunder, including
>> the obligor, contemporaneously with the acquisition of the
>> asset by the depository institution,
>> (3) was approved by the board of directors of the
>> depository institution or its loan committee, which approval
>> shall be reflected in the minutes of said board or
>> committee, and
>> (4) has been, continuously, from the time of its
>> execution, an official record of the depository institution.

12 U.S.C. § 1823(e).  Congress intended section 1823(e) "to allow federal and state

examiners to rely on a bank's records in evaluating the worth of the bank's assets,

"ensure mature consideration of unusual loan transactions by senior bank officials,

[to] prevent fraudulent insertion of new terms, with the collusion of bank employee

a bank appears headed for failure."  Langley v. FDIC, 484 U.S. 86, 91–92, 108 S.Ct.

401 (1987).[0]

Clearly the district court was correct in holding that D'Oench Duhme and

1823(e) barred any defense based on the Bathgate defendants' contention that they r

an oral agreement with the Bank to extend the April 1 closing date identified in th

February letter.  Thus, the real question is whether in light of the D'Oench Duhme

doctrine and the requirements of section 1823(e), the alleged agreement embodied in

February letter can "diminish or defeat" the FDIC's rights under the promissory not

---

[0]The protection of 12 U.S.C. § 1823(e) applies to the FDIC in both its corporate ca
and its capacity as receiver for failed institutions.  12 U.S.C. §§ 1821(d)(9)(A),
1823(e).  See also Bowen v. FDIC, 915 F.2d 1013, 1015 n.3 (5th Cir. 1990); FDIC v.
Hamilton, 939 F.2d 1225, 1230 n.6 (5th Cir. 1991).

19

acquired from the Bank.  The Bathgate defendants argue that the agreement embodied

February letter can "diminish or defeat" the FDIC's rights under the promissory not

acquired from the Bank because it is in writing.  Their position that the contents

February letter can diminish or defeat the FDIC's rights under facially unqualifie

promissory notes must rest on one of two constructions of the February letter.  One

construction they seem to advance is that once Bathgate signed the Bank's February

and returned it to the Bank in a timely fashion, the Bank's preparation of the docu

required to close the proposed loan consolidating five of Bathgate's preexisting no

became a condition to the performance of the Bathgate defendants' obligations under

preexisting notes.  Alternatively, the Bathgate defendants' position must rest on t

argument that once Bathgate signed the Bank's February letter and returned it to th

in a timely fashion, the letter obligated the Bank to close and execute the propose

But neither of these arguments survives the D'Oench Duhme doctrine or section 1823

because the February letter does not create a genuine issue of material fact as to

existence of a written agreement providing (1) that the Bank's preparation of the

documents required to close the proposed loan was a condition to the performance of

Bathgate defendants' obligations under the preexisting notes or (2) that the Bank w

obligated to close and execute the proposed loan consolidating Bathgate's obligatio

under five of the preexisting notes.

The Supreme Court in Langley held that in light of section 1823(e)'s int

functions and of the broad language used in D'Oench Duhme, the term "agreement" in

1823(e) should be construed to cover not only a party's promises to perform acts, b

conditions to the performance of a party's obligations.  Langley, 484 U.S. at 90-93

S.Ct. at 401-02. Thus, the Act requires that both promises and conditions be in wri

Moreover, as we noted above, "the purpose of section 1823(e), and by implication th

D'Oench, Duhme doctrine, is to allow the FDIC to rely on bank records both when ins

the bank and when taking over a failed bank."  FSLIC v. Two Rivers Assocs., Inc., 8

20

1267, 1275 (11th Cir. 1989) (citing Langley, 484 U.S. at 91-92, 108 S.Ct. at 401).

the focus of our inquiry must be whether the February letter put the FDIC on notice

that the Bank's preparation of the documents required to close the proposed loan wa

condition to the performance of the Bathgate defendants' obligations under the pree

notes or (2) that the Bank was obligated to close and execute the proposed loan

consolidating Bathgate's obligations under five of the preexisting notes.

Although the February letter contains the Bank's written promise to prepa

certain documents required to close the proposed loan, it does not contain any lang

suggesting that the performance of this promise is a condition to Bathgate's perfor

of his obligations on the preexisting notes. Thus, it does not put the FDIC on not

that Bathgate's obligations under the otherwise unqualified preexisting notes were

conditioned on the Bank's preparation of the documents required to close the propos

loan. Indeed, we cannot conceive that the Bank would have entered into an agreemen

would discharge many millions in loans if the subsequent loan was not closed.

Similarly, although the February letter expresses the Bank's intent to "m

and consolidate" five of Bathgate's preexisting notes, it does not obligate the Ban

so. See Bathgate defendants' App. II at 629. The February letter stated that the

had "agreed to modify and consolidate" five of Bathgate's preexisting notes, id., a

signed by the Bank's Senior Vice President, William Carlough, id. at 642. Moreover

receiving the letter, Bathgate signed it and returned it to the Bank by February 26

as required by the terms of the letter. Id. at 641-42. However, the letter expres

stated that the Bank's "commitment shall expire and shall be of no further effect i

transactions contemplated by th[e] commitment are not closed by 4/1/91." Id. at 64

Bank sent a draft agreement for the proposed loan to Bathgate on March 22, 1991, vi

Federal Express. Id. at 649. This draft agreement and the accompanying promissory

were incomplete and never were signed by Bathgate or a representative of the Bank.

649-85. Furthermore, the draft agreement explicitly stated that "[t]he Bank shall

21

obligated to make the Loan hereunder unless all legal matters incident to the trans

hereby contemplated shall be satisfactory to the Bank and its counsel, and it shall

received properly executed, as of the closing date, and in a form it deems satisfac

the agreement, the attached promissory note, and other enumerated documents.  Id. a

64.

Since neither the draft loan agreement nor the attached promissory note w

completed or signed, the proposed loan never was closed, and the February letter ex

by its own terms on April 1, 1991.  It is clear that neither the February letter, n

draft agreement and promissory note could have put the FDIC on notice:  (1) that th

February letter made Bathgate's obligations under the otherwise unqualified preexis

notes conditional on the Bank's preparation of the documents required to close the

proposed loan or (2) that once Bathgate signed the Bank's February letter and retur

to the Bank in a timely fashion, the Bank was obligated to close and execute the pr

loan.  As the FDIC notes in its brief, "Bathgate's breach of contract claims and hi

defenses to his obligations primarily rest on three unrecorded conditions to otherw

facially unqualified instruments: (1) that the terms of the February Commitment Let

continued to bind the Bank after April 1, 1991, despite the Letter's express terms

contrary; (2) that the Letter cured his October 1990 default on the 11,500,000 Note

(3) that the February commitment letter covered not only the five preexisting notes

the Bank proposed to consolidate, but also "the $185,000 Note, the $1,620,000 Note,

the $2,000,000 Note . . . despite the lack of a writing purporting to link these No

the Letter."  See FDIC Br. at 15.

Thus, we hold that D'Oench Duhme and section 1823(e) bar the Bathgate

defendants' defense of breach of agreement.  Our holding is consistent with the hol

in RTC v. Daddona, 9 F.3d 312; FSLIC v. Two Rivers Assocs., Inc., 880 F.2d 1267; FS

Gemini Management, 921 F.2d 241 (9th Cir. 1990); and FDIC v. O'Neil, 809 F.2d 350 (

Cir. 1987).

22

Daddona involved a suit brought by the RTC against real estate developers [to] recover on a $2,230,000 loan for the acquisition of an industrial park. Daddona, 9[    ] at 314-15. The RTC had acquired the loan from a savings and loan. Id. The defenda[nt real] estate developers claimed that the savings and loan had breached a written agreemen[t to] provide them an additional loan of at least $9,000,000 for improvement and developm[ent of] the industrial park. Id. In support of their argument, the defendants pointed to [the] "several writings that refer[red] to the $2,230,000 loan as an initial loan and ref[erred] to purposes other than the acquisition of property." Id. at 316. We held that "an [oral] agreement is only 'in writing' if its basic structure is apparent on the face of th[e] writing," id. at 314, and concluded that the alleged agreement to extend an additio[nal] loan did not survive the requirements of D'Oench Duhme and section 1823(e) because [the] writings "provide[d] no terms of the alleged agreement whatsoever," id. at 317. Th[e] "evidence establishe[d] no more than that the parties contemplated future loans, n[ot that] they had agreed to them." Id.

In this case, the February letter establishes that the Bank contemplated [a] future loan to Bathgate on certain terms. However, it is not "apparent on the face [of the] writing" that once Bathgate signed the Bank's February letter and returned it to th[e Bank] in a timely fashion, the Bank's preparation of the documents required to close the[    ] proposed loan would become a condition to the performance of the Bathgate defendant[s'] obligations under the preexisting notes, nor is it "apparent on the face of the wri[ting]" that once the Bank's February letter was signed by Bathgate and returned to the Ban[k in a] timely fashion, the Bank would become obligated to close and execute the proposed l[oan] consolidating Bathgate's obligations under five of the preexisting notes. What is [    ] "apparent on the face of the writing" is that the commitment embodied in the Februa[ry] letter would expire on April 1, 1991, if the transactions contemplated in the lette[r were] not closed by that time. Thus, our holding in Daddona supports our conclusion that [    ]

23

D'Oench Duhme and section 1823(e) bar the Bathgate defendants' defense of breach of agreement.

Two Rivers Assocs. involved a suit by the FSLIC to recover on several not acquired from a savings and loan and to foreclose on the mortgages securing these r Two Rivers Assocs., 880 F.2d at 1268-69. The defendant in Two Rivers Assocs., like defendant in Daddona, claimed that the savings and loan had breached an agreement t provide it with additional funds. Id. at 1275. According to the defendant, the sa and loan agreed to fund an entire development project, but refused to advance furth funds after funding only part of the project. Id. The Court of Appeals for the Ele Circuit held that the defendant was barred from asserting a defense based on the br an agreement to fund the entire development project because the written provisions loan agreements "at most reflect[ed] that [the savings and loan] . . . intended to additional funds, [and] . . . fell far short of establishing that [the savings and . . was obligated to fund the entire project." Id. at 1276. "At no point in the m different documents evidencing the loans at issue . . . [was] there an explicit ac of the obligation to fund the entire project." Id. Thus, D'Oench Duhme barred the defendant's defense of breach of agreement because the FSLIC was not "put on notice agreement that . . . [the savings and loan] was obligated to fund the entire proje Id.[0] Similarly, in this case, D'Oench Duhme bars the Bathgate defendants' defense breach of agreement because the February letter did not put the FDIC on notice that Bathgate signed the Bank's February letter and returned it to the Bank in a timely

[0]See also Mainland Sav. Ass'n v. Riverfront Assocs., Ltd., 872 F.2d 955, 956 (10th (held that D'Oench Duhme barred obligor's defenses of intentional fraud, gross negl reckless conduct, breach of an agreement to fund, and breach of the implied covenan contractual fair dealing because "[n]othing in the note, accompanying security agre or other documents pertaining to the transaction evidences any type of conditional or side agreement [to fund a second loan] . . . of which the FSLIC might have been aware"), cert. denied, 493 U.S. 890, 110 S.Ct. 235 (1989); Beighley v. FDIC, 868 F. 784 (5th Cir. 1989) (held that D'Oench Duhme bars defenses arising from bank's alle agreement to finance future loans because it is "not clearly evidenced in the bank' records, and would not be apparent to bank examiners").

24

fashion, the Bank's preparation of the documents required to close the proposed loa

become a condition to the performance of the Bathgate defendants' obligations under

preexisting notes or that the Bank would become obligated to close and execute the

proposed loan.

In FSLIC v. Gemini Management, 921 F.2d 241, the FSLIC sought to recover

loan of $1,100,000 acquired from a savings and loan. The defendant asserted affirm

defenses and counterclaims based on the savings and loan's alleged agreement to ext

a larger loan of $1,545,000. Id. at 243-45. In support of its claims, the defenda

pointed to an initial commitment letter, stating that the savings and loan agreed t

the defendant $1,545,000. Id. This initial commitment letter "was unsigned, was n

evidenced by a promissory note, and therefore expired by its own terms on August 2

1984." Id. at 245. In contrast, a second commitment letter providing for a loan o

$1,100,000 "was signed and supported by full loan documentation." Id.

The Court of Appeals for the Ninth Circuit held that "D'Oench and its pro

require a clear and explicit written obligation." Thus, although D'Oench Duhme doe

bar "'defenses based on a bilateral obligation which appears in the bank's records,

(quoting Two Rivers, 880 F.2d at 1275) (emphasis added in Gemini Management), the c

held that D'Oench Duhme barred the defenses and counterclaims based on the savings

loan's alleged agreement to extend a larger loan of $1,545,000. The court based it

holding on the conclusion that the initial commitment letter fell short of "establi

that . . . [the savings and loan] was obligated" to extend the larger loan, althoug

established the savings and loan's intent to do so. 921 F.2d at 245. Gemini Manag

is persuasive precedent because the February letter, like the initial commitment le

Gemini Management, was not evidenced by a promissory note, and the draft loan agree

subsequently prepared by the Bank never was signed. Thus, the February letter and

draft loan agreement fall short of establishing the type of written bilateral oblig

required by Gemini Management to survive D'Oench Duhme.

25

Finally, the decision by the Court of Appeals for the Seventh Circuit in

O'Neil, 809 F.2d 350, also supports our holding. The defendants in O'Neil borrowed

$1,000,000 from a bank. O'Neil, 809 F.2d at 352. The FDIC subsequently purchased

defendants' $1,000,000 note, and then sought to collect on it. Id. The defendants

claimed that when the bank extended the $1,000,000 loan, it and two other banks agr

support the defendants' bid to purchase a bankrupt hospital. Id. According to the

defendants, the banks breached this agreement by supporting a rival bidder, and the

defendants were entitled to retain the $1,000,000 as a setoff to their damages agai

banks. Id. The principal writing supporting the defendants' argument was a draft

agreement which never had been executed, but which was referenced in the $1,000,00

promissory note. The Court of Appeals held that the unexecuted draft agreement did

satisfy the "demanding requirements of section 1823(e)" because it "was never execu

the parties to it, was not approved by the bank's board or loan committee, was not

in the bank's minutes, and was not an official or for that matter any other sort of

record." Id. at 353-54.

In this case, although the Bank's Senior Credit and Policy Committee and

Bank's Executive Committee approved the "proposal" contained in the February letter

their decisions were noted in their minutes, see Bathgate App. II at 646, 648, the

was merely an offer which was contingent on a number of events and expired on April

1991. By the terms of the offer, Bathgate could not transform the offer into an

unconditional agreement merely by signing and returning it by February 26. In fact

Bank prepared a draft agreement and promissory note which, like the draft agreement

O'Neil, never were executed and therefore never became official bank records. Thus,

reiterate that in light of D'Oench Duhme and the requirements of section 1823(e), t

February letter cannot support the Bathgate defendants' claims that once Bathgate s

the Bank's February letter and returned it to the Bank in a timely fashion, the Ban

preparation of the documents required to close the proposed loan became a condition

26

performance of the Bathgate defendants' obligations under the preexisting notes. Furthermore, the February letter cannot support the Bathgate defendants' claim that Bank became obligated to close and execute the proposed loan consolidating Bathgate obligations under five of the preexisting notes.

Moreover, it is questionable whether any agreement reflected in the Febru letter would satisfy the contemporaneity requirement of section 1823(e), since the issued the February letter after Bathgate executed the notes involved in this case. 12 U.S.C. § 1823(e)(2); FDIC v. Virginia Crossings Partnership, 909 F.2d 306, 309 Cir. 1990) (held that memoranda prepared many months before execution of loans did satisfy section 1823(e)'s contemporaneity requirement); FDIC v. Manatt, 922 F.2d 48 (8th Cir.) (concurring opinion) ("I concur with the result the court reaches and wr separately only to express my view that the district court did not err in holding t contemporaneous requirement of 12 U.S.C. § 1823(e)(2) was not met, and that Manatt established accord and satisfaction as an affirmative defense."), cert. denied, 111 2889 (1991); Carteret Sav. Bank, P.A. v. Compton, Luther & Sons, 899 F.2d at 344 (' 12 U.S.C.A. §1823 clearly requires that the collateral agreement must be contempora [with the execution of a note] if it is to be enforceable."). But see Resolution T Corp. v. Midwest Fed. Sav. Bank, 4 F.3d 1490, 1500-01 (9th Cir. 1993) (holding tha commitment letter executed more than two months prior to the final loan documents satisfied contemporaneity requirement of section 1823(e)(2) because "it takes sever months to put together" large loans and satisfaction of the requirement "should be considered in light of commercial reality."); FDIC v. Manatt, 922 F.2d at 489 n.4 ( doubt that Congress intended that section 1823(e)(2)'s contemporaneousness requirem would defeat a valid accord and satisfaction entered into by a bank. Valid accord satisfaction agreements are never contemporaneously executed with the initial docum incurring the debt – the idea that they would be so executed is simply contrary to business practice and to common sense. Surely Congress did not mean to preclude ba

27

from getting something of value by an accord and satisfaction rather than nothing at all."). However, since we hold that the conditions on which the Bathgate defendants were not part of the February letter and thus were not in writing as required by 12 § 1823(e)(1), we need not reach a definitive conclusion as to the applicability of contemporaneity requirement of 12 U.S.C. § 1823(e)(2) in this case.

In support of their argument that the February letter satisfies the requi of D'Oench Duhme and section 1823(e), the Bathgate defendants cite Agri Export Co-o Universal Sav. Ass'n, 767 F. Supp. 824, 832 (S.D. Tex. 1991), and other cases holdi D'Oench Duhme and section 1823(e) do not bar certain defenses. However, these case distinguishable.

In Agri Export Co-op, the plaintiffs sought to enforce a letter of credit by a savings association. Agri Export Co-op, 767 F. Supp. at 826-27. As receiver savings association, the RTC denied liability on the letter of credit, arguing that D'Oench Duhme and section 1823(e) barred recovery by the plaintiffs since the savin association's directors did not approve the letter of credit and it was not recorde properly in the savings association's records. Id. at 827. The court held that th D'Oench Duhme doctrine did not apply to the letter of credit because it was a "stra forward obligation of the bank," not a "side agreement . . . inextricably entwined loan or other asset of the financial institution" or an agreement "intended to dece . . [or] likely to deceive banking authorities." Id. at 832. Moreover, the court that "[e]ven if the D'Oench doctrine could somehow be applicable to a letter of cre issued by a failed savings institution and its execution could somehow be character a 'secret' or 'side' agreement, the 'completely innocent' exception to D'Oench arti in Federal Deposit Ins. Corp. v. Meo, 505 F.2d 790, 793 (9th Cir. 1974) would be appropriate in this case . . . [because] [o]ne would hardly expect a bank customer more than the . . . [plaintiff] did to assure that the letter of credit issued by Universal was valid." Id.

28

This case is distinguishable from Agri Export Co-op on multiple grounds. the February letter is a "side agreement . . . inextricably entwined" with preexist Bank assets. Moreover, although the February letter may not have been intended to banking authorities, because the letter had expired and the proposed loan consolida certain preexisting notes never had been closed, the letter would not have put bank authorities on notice that any of Bathgate's preexisting notes were no longer enfor as written. Even if we were to recognize a "completely innocent" exception to D'Oe Duhme, Bathgate would not fall under it. Bathgate could have done more to assure t February letter or other writings clearly indicated that once he signed and timely returned the Bank's February letter, the Bank's preparation of the documents requir close the proposed loan became a condition to the performance of his obligations ur preexisting notes (in the unlikely circumstance that this was the parties' understa or, alternatively, that the Bank became obligated to close and execute the proposed consolidating his obligations under five of the preexisting notes. At a minimum, h have delivered to the Bank the documents which the February letter required him to and which clearly could not be prepared by Bank counsel. See footnote 2, supra. A court in FDIC v. Hamilton, 939 F.2d 1225, 1230 (5th Cir. 1991), stated, one "justif for applying D'Oench, Duhme to oral agreements or collateral writings is that the o as party to the transaction is in a better position to protect himself than the FDI See also FDIC v. First Nat'l Fin. Co., 587 F.2d 1009, 1012 (9th Cir. 1978) (holding Meo is distinguishable because in Meo, "[t]here was simply a failure of considerati which the promisor was unaware until after the bank was closed and the suit was fil the FDIC," whereas in this case there was no failure of consideration).

The Agri Export Co-op court also held that section 1823(e) did not apply letter of credit because the savings association did not "acquire a particular, identifiable asset" in exchange for the letter of credit, and therefore the RTC had 'right, title or interest' in an asset that claims and defenses could 'diminish or

29

defeat'." 767 F. Supp. at 833-34. Thus, this case is also distinguishable from Ag

Export Co-op because the FDIC has an interest in the preexisting notes on which the

Bathgate defendants defaulted, and the Bathgate defendants' claims and defenses, if

successful, would "diminish or defeat" the FDIC's interest in these assets.

Other cases cited by the Bathgate defendants are also distinguishable. F

example, in Howell v. Continental Credit Corp., 655 F.2d 743, 744-745 (7th Cir. 198

FDIC sought to enforce leases which it had acquired from an insolvent bank. The le

provided that a lessor which assigned its rights to the bank would lease certain ec

to a corporation. Id. The corporation claimed that the leases were invalid becaus

lessor never had purchased the required equipment, but the district court held that

corporation's claim was barred by D'Oench Duhme and section 1823(e). The Court of

for the Seventh Circuit reversed, holding that D'Oench Duhme and section 1823(e) we

inapplicable because the leases that the FDIC sought to enforce "facially manifest[

bilateral obligations and serve[d] as the basis of the lessee's defense." As the H

court stated,

> 'when . . . the asset upon which the FDIC is attempting to recover is
> the very same agreement that the makers allege has been breached by
> the FDIC's assignors, . . . [n]one of the policies that favor the
> invocation of . . . [§ 1823(e)] are present . . . because the terms of
> the agreement that tend to diminish the rights of the FDIC appear in
> writing on the face of the agreement that the FDIC seeks to enforce.'

655 F.2d at 747 (quoting Riverside Park Realty Co. v. FDIC, 465 F. Supp. 305, 313 (

Tenn. 1978)). Like the court in Howell, the court in FDIC v. Laguarta, 939 F.2d 12

1238-39 (5th Cir. 1991), held that D'Oench Duhme does not bar an affirmative defens

on "funding obligations . . . spelled out" in the loan agreement underlying the not

the FDIC is seeking to enforce. See also FDIC v. Merchants Nat'l Bank of Mobile,

F.2d 634, 639 (11th Cir.) ("Section 1823(e) does not apply . . . when the court det

if an asset is invalid . . . for breach of bilateral obligations contained in the a

. . . In such cases the parties contend that no asset exists or an asset is invalid

30

that such invalidity is caused by acts independent of any understanding or side

agreement.") (citations omitted), <u>cert. denied</u>, 469 U.S. 829, 105 S.Ct. 114 (1984).

In this case, however, the FDIC is attempting to enforce facially valid

promissory notes which impose unilateral obligations on Bathgate to pay certain sum

the Bank, and neither these notes nor the loan agreements supporting them are the b

the Bathgate defendants' defense of breach of agreement.  Instead, their defense is

on a separate document, the February letter, which they claim is a separate agreeme

The court in <u>O'Neil</u> distinguished <u>Howell</u> on this basis, stating that it was "hard t

quarrel" with the result in <u>Howell</u> because it involved a lease not a promissory not

lease "was explicit about the lessor's obligation," and "there was no side agreemen

<u>O'Neil</u>, 809 F.2d at 354.[0]  Thus, this case is distinguishable from <u>Agri Export Co-o</u>

<u>Howell</u>, and other cases holding that defenses based on writings containing bilatera

obligations are not barred by <u>D'Oench Duhme</u> or section 1823(e).

We will affirm the district court's holding that <u>D'Oench Duhme</u> and sectio

1823(e) bar the Bathgate defendants' defense of breach of agreement.  The district

also held that the Bathgate defendants' claim that the February letter constituted

accord and satisfaction was barred because "the transactions contemplated in the Fe

Commitment did not close before April 1, 1991, and there is no evidence of an agree

which satisfies § 1823(e) and extends the closing date."  <u>FDIC</u> <u>v.</u> <u>Bathgate et al.</u>,

No. 91-2779 (consolidated), Memorandum and Order at 15 (D.N.J. Mar. 18, 1993) (<u>see</u>

---

[0]<u>See also</u> <u>FDIC</u> <u>v.</u> <u>Hamilton</u>, 939 F.2d at 1231 (recognizing <u>Howell</u> exception to <u>D'Oen</u>
<u>Duhme</u>, but holding that obligors could not avail themselves of it because the note
which their claim was based did not "facially manifest" the bank's "bilateral oblig
to fund timely the line of credit," the obligation which the obligors claimed the b
failed to satisfy); <u>Bell & Murphy & Assocs., Inc.</u> <u>v.</u> <u>Interfirst Bank Gateway, N.A.,</u>
F.2d 750, 754 (5th Cir.) (holding that the <u>Howell</u> exception to <u>D'Oench Duhme</u> is onl
applicable if the bank's obligation appears on the face of the document the FDIC is
seeking to enforce and the document is properly recorded in the bank's records), <u>ce</u>
<u>denied</u>, 498 U.S. 895, 111 S.Ct. 244 (1990).

31

Bathgate defendants' App. I at 32).  Based on the forgoing analysis, we also will a

this holding.

(b)  <u>Defenses of breach of the duty of good faith,</u>                    wr<br>
<u>acceleration, and other defenses</u>                    <u>sounding in tort</u>

The Bathgate defendants raised a number of defenses "which sound in tort,

including breach of the duty of good faith; violation of the Consumer Fraud Act, [N

Stat. Ann. § 56:8-1 (West 1989)] <u>et seq.</u>; trade libel/slander of credit; slander of

unlawful interference with prospective economic advantage; and malicious and egregi

breach of the Bank's duty to protect the Collateral pledged to secure the Bathgate

<u>See</u> Bathgate defendants' Br. at 20 n.11.

The district court held that the <u>D'Oench Duhme</u> doctrine and section 1823

barred the defenses of the duty of good faith and wrongful acceleration, because th

could not be separated from the Bathgate defendants' allegations that the Bank brea

oral agreement since "[a]bsent the alleged oral agreement, . . . [the Bank] was ent

to demand payment on the overdue loans."  <u>FDIC</u> <u>v.</u> <u>Bathgate et al.</u>, Civ. No. 91-2779

(consolidated), Memorandum and Order at 13 (D.N.J. Mar. 18, 1993) (<u>see</u> Bathgate

defendants' App. I at 30).  The district court also refused to consider the defense

impairment of collateral and other defenses based on the FDIC's tortious conduct be

they were "similarly predicated on the alleged oral agreement."  <u>Id</u>. at 14 (<u>see</u> Bat

defendants' App. I at 31).

As the FDIC points out in its brief, <u>see</u> FDIC Br. at 24 n.15, <u>D'Oench Duh</u>

a defense or claim sounding in tort when the alleged tort arises from an unrecorded

agreement.  <u>See, e.g.,</u> <u>In re Columbus Ave. Realty Trust</u>, 968 F.2d 1332, 1344-45 (1s

1992); <u>Oliver</u> <u>v.</u> <u>RTC</u>, 955 F.2d 583, 586 (8th Cir. 1992); <u>Timberland Design, Inc.</u> <u>v.</u>

<u>Serv. Bank for Sav.</u>, 932 F.2d 46, 50 (1st Cir. 1991).  The Bathgate defendants clai

<u>D'Oench Duhme</u> does not bar the defense of the duty of good faith, the defense of wr

acceleration, or other defenses based on the Bank's allegedly tortious conduct beca

32

"[c]ontrary to the Opinion [of the district court], these claims are not 'inextrica[ble]
linked to the alleged oral agreement.'" see Bathgate defendants' Br. at 20 (quotin[g]
v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 13 (D.[ ]
Mar. 18, 1993)). We disagree with the Bathgate defendants' position, and thus conc[lude]
that the Bathgate defendants are barred from raising the defenses of the duty of go[od]
faith, wrongful acceleration, and impairment of collateral, as well as other defens[es]
based on the Bank's tortious conduct.

In support of their argument that the wrongful acceleration and breach of[ the]
duty of good faith defenses are not barred, the Bathgate defendants cite Texas
Refrigeration Supply, Inc. v. FDIC, 953 F.2d 975 (5th Cir. 1992). See Bathgate
defendants' Br. at 21, 29. The court in Texas Refrigeration held that the district[ court]
erred in granting summary judgment against the obligors on their claim of wrongful
acceleration because there were genuine issues of material fact regarding whether t[he note]
had been accelerated and if so, whether it was accelerated in bad faith. Id. at 98[0.]
However, the court noted that the obligor's claim of wrongful acceleration would be
"ineffective against the FDIC" if it was based on an oral agreement providing that [the]
lender would not accelerate the obligor's note. Id. at 982 n.13.

In this case, the Bank informed Bathgate by a letter dated April 11, 1991[ that]
he was in default under two notes, the $11,500,000 note and the $187,500 note, and [as]
a result, the Bank was accelerating the maturity on these notes. See Bathgate defe[ndants']
App. I at 309-10. At the same time, the Bank demanded payment on three notes which[ were]
payable "on demand," the $4,000,000 note, the $250,000 note, and the $1,800,000 not[e, id.]
at 310. Subsequently, the Bank demanded payment on the $185,000 note which already[ had]
matured, id. at 315-16, and accelerated the maturity of two additional notes on whi[ch]
Bathgate defaulted in the summer of 1991, the $2,000,000 note and the $1,620,000 no[te.]

The Bathgate defendants point to the minutes of the April 10, 1991 meetin[g of]
the Bank's Board of Directors as evidence of the Bank's bad faith. See Bathgate

33

defendants' App. II at 734-37.  However, even drawing all inferences in favor of th

Bathgate defendants, we conclude that the minutes of the Board meeting fail to esta

genuine issue of material fact regarding whether the Bank's decision to accelerate

Bathgate's obligations was made in good faith.  Thus, having held that D'Oench Duhm

defenses based on any of the following: (1) an alleged oral agreement extending the

deadline in the February letter; (2) the claim that the Bank's preparation of the c

documents for the loan proposed in the February letter became a condition to the

performance of Bathgate's obligations under the preexisting notes; or (3) the claim

the Bank became obligated to close the loan proposed in the February letter, we con

that there is no genuine issue of material fact regarding whether the Bank's decisi

accelerate Bathgate's obligations was made in good faith.

In support of their claim that the defense of impairment of collateral is

barred, the Bathgate defendants cite FDIC v. Blue Rock Shopping Center, Inc., 766 F

(3d Cir. 1985).  See Bathgate defendants' Br. at 23, 30.  In Blue Rock, we held tha

co-maker who signs a note to accommodate the primary obligor and who has the right

recourse against the primary obligor is a surety who can assert the defense [of

unjustifiable impairment of collateral]" codified in section 3-606(1) of the Unifor

Commercial Code.  Blue Rock, 766 F.2d at 749.  We also noted that although D'Oench

and section 1823(e) would not bar the introduction of an oral agreement between a

principal and a surety regarding the surety's right of recourse, they would bar rel

on "agreements between a bank and its obligor showing or attempting to show that th

obligation was illusory or conditional."  Id. at 754.

In this case, the Bathgate defendants' defense of unjustifiable impairmen

collateral depends on their assertion that the February letter creates a genuine is

material fact as to whether the Bathgate defendants were in default.  See Bathgate

defendants' Br. at 24.  Thus, having rejected this assertion because D'Oench Duhme

defenses based on the claims: (1) that the February letter made the Bank's preparat

34

the closing documents for the proposed loan a condition to the performance of Bathg

obligations under the preexisting notes; and (2) that the February letter obligated

Bank to close the loan proposed, we conclude that the Bathgate defendants' defense

impairment of collateral also is barred.

    B.    <u>Bathgate's Claims Against The FDIC</u>

        1.    <u>Breach of contract</u>

Like the Bathgate defendants' defense of breach of contract, <u>D'Oench Duhm</u>

section 1823(e) bar the Bathgate defendants' claims that the Bank breached an oral

agreement to extend the April 1 deadline for closing the consolidated loan proposed

February letter or that the Bank breached the terms of the February letter by faili

prepare and provide the documents required to close the loan. We base this conclus

the fact that neither claim is supported by a written document manifesting bilatera

obligations, and that the February letter states that the Bank's commitment to refi

five of Bathgate's notes expires on April 1.

Moreover, as the FDIC points out, Bathgate has not rebutted specifically

FDIC's evidence that he failed to provide a substantial portion of the documents re

by the February letter. <u>See</u> FDIC Br. at 29 & n.18 (citing to the record before the

district court). The February letter identifies specific documents Bathgate was to

furnish Bank counsel prior to the closing of the transactions contemplated by the l

<u>see</u> Bathgate defendants' App. II at 635-37 (<u>see also</u> Bathgate defendants' App. II a

05), 639-40,[0] and states that Bathgate must provide "[s]uch other information, docu

certificates, financial statements or opinions reasonably required by the Bank and

counsel," <u>id</u>. at 637.[0] The fact that "all required information was either in the B

---

[0]We already have set forth these items at note 2, <u>supra</u>.

[0]The February letter also states that "[t]his transaction will be closed on the Ban

determination, in its sole discretion, that there has been no material adverse chan

the financial operations and condition of the Borrower from the time of application

that no event has occurred or information has become known that makes the Bank deem

35

possession or would have been provided to the Bank, if requested[,]" see Bathgate

defendants' Br. at 13 (emphasis added), is immaterial since the February letter doe

indicate that the Bank was obligated to request information which the February lett

required Bathgate to provide.  Surely if Bathgate wanted the Bank to close on the l

contemplated by the February letter, he should have delivered the documents he was

to supply to the Bank.  As he does not claim that he did so, the Bathgate defendant

breach of contract claims are barred even without regard for D'Oench Duhme and sect

1823(e).  As we noted above, "[w]here the movant has produced evidence in support o

motion for summary judgment, the nonmovant cannot rest on the allegations of pleadi

must do more than create some metaphysical doubt."  Petruzzi's IGA, 998 F.2d at 123

Thus, even if the Bathgate defendants' claim of breach of agreement were not barred

FDIC would be entitled to summary judgment.

## 2.    Trade Libel/Slander of Credit/Slander of

Title

With regard to the Bathgate defendants' claims that the default letters,

complaints and alleged statements to the media issued by the Bank constitute trade

slander of credit, and slander of title, the district court reached the following

conclusions: (1) the default letters did not contain false statements since the clo

date in the February letter had passed and thus Bathgate was actually in default; (

Bank's legal complaints were privileged from slander and defamation actions; and (3

Bathgate defendants "failed to designate specific facts that raise a material issue

trial regarding . . . [the Bank's] alleged republishing of the default letters and

complaints to the press."  FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated)

Memorandum and Order at 16 (D.N.J. Mar. 18, 1993) (see Bathgate defendants' App. I

insecure in this transaction."  See Bathgate defendants' App. II at 641.  However,
party grounds its argument on this provision.

36

Based on these findings, the district court granted summary judgment in favor of th on the Bathgate defendants' claims of libel and slander.[0]

The torts of trade libel, slander of credit, and slander of title require publication, or communication to a third person, of false statements concerning the plaintiff, his property, or his business." Henry V. Vacaro Const. Co. v. A.J. DePa Inc., 349 A.2d 570, 572 (N.J. Super. Ct. Law Div. 1975); see also Wendy's of South Inc. v. Blanchard Management Corp., 406 A.2d 1337, 1338 (N.J. Super. Ct. Ch. Div. 1 The Bathgate defendants maintain that they sufficiently have stated claims for trad libel, slander of credit, and slander of title to withstand summary judgment becaus Bank and Bank officers published and communicated to third parties that Bathgate wa default. See Bathgate defendants' Br. at 31–33. According to the Bathgate defenda the district court's conclusion that the Bathgate defendants were in default as of 1, 1991, required it to engage in improper weighing of the evidence presented by th and the Bathgate defendants on this issue. Id. at 32. We disagree.

As the Bathgate defendants' defenses based on the February letter are bar must regard the Bathgate defendants as having been in default as of April 1, 1991. event, even if the defenses were not barred, the statement that the Bathgate defend were in default was accurate with respect to the preexisting notes, for the existen defenses to an action predicated on defaults merely excuses a defendant's failure t a payment, but the defenses do not constitute payment. Thus, there is no genuine i material fact regarding the veracity of statements by the Bank and its loan officer asserting that Bathgate was in default.

---

[0]We apply New Jersey substantive law to the Bathgate defendants' counterclaims for libel, slander of credit, slander of title, and unlawful interference with prospect economic advantage because both the FDIC and the Bathgate defendants briefed the cl under New Jersey law, and no party asserts that federal law or the law of another s applicable.

37

Moreover, as the district court held, allegations made in pleadings filed

action are privileged as long as they have some relation to the action.  Wendy's of

Jersey, Inc. v. Blanchard Management Corp., 406 A.2d at 1338-39.  There is no doubt

statements that Bathgate was in default on certain notes were related to the action

collect on those notes. Thus, we will affirm the district court's order for summary

judgment in favor of the FDIC on the Bathgate defendants' counterclaims for libel,

of credit, and slander of title.

### 3.    Unlawful Interference with Prospective Economic                    Ac

With regard to the counterclaim for tortious interference, the district c

held that the Bathgate defendants "failed to raise an adequate response to the FDIC

argument that the claim is barred under the D'Oench, Duhme doctrine and § 1823(e)."

v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 16 (D.

Mar. 18, 1993) (see Bathgate defendants' App. I at 33).

"Under New Jersey law the five elements of a claim of tortious interferen

a prospective or existing economic relationship are: (1) a plaintiff's existing or

reasonable expectation of economic benefit or advantage; (2) the defendant's knowle

that expectancy; (3) the defendant's wrongful, intentional interference with that

expectancy; (4) the reasonable probability that the plaintiff would have received t

anticipated economic benefit in the absence of interference; and (5) damages result

from the defendant's interference." Lightning Lube, Inc. v. Witco Corp., 4 F.3d 115

(3d Cir. 1993) (citing Fineman v. Armstrong World Indus., Inc., 980 F.2d 171, 186

1992), cert. denied, 113 S.Ct. 1285 (1993); Printing Mart-Morristown v. Sharp Elecs

Corp., 563 A.2d 31, 37 (N.J. 1989)).  The Bathgate defendants allege that Bathgate

reasonable expectation of selling his Collateral at full market prices," and that t

"intentionally and maliciously interfered by publishing false information through t

Default Letters and statements to the media."  See Bathgate defendants' Br. at 33-3

38

we have concluded that the Bathgate defendants have not created a genuine issue of

material fact regarding the veracity of statements that Bathgate was in default, we

that the Bathgate defendants failed to state a claim for unlawful interference with

prospective economic advantage.  Moreover, Bathgate's expectation of selling his

collateral at full market prices was based on the alleged agreement contained in th

February letter which, if implemented, would have at least delayed the Bank's recou

the collateral and, inasmuch as that agreement is not enforceable, his claim of unl

interference with prospective economic advantage also is barred by D'Oench Duhme an

section 1823(e).  See Bathgate defendants' Br. at 9 (stating that the February lett

"provided that the Commercial Notes would be repaid by Bathgate's execution of a ne

and pledge of additional collateral. . . .  In return, Bathgate was to repay the lo

personally selling collateral, such as real estate and partnership interests, pledg

security for the loans (the "Collateral"), over time, in order to achieve the great

payment to the Bank, to protect Bathgate's equity in the Collateral, and to avoid

publicity which would cause distress prices.").

### 4.    Could the Bathgate defendants set off their alleged damages against their obligations under the notes a guaranty?

The FDIC argues that even if D'Oench Duhme and section 1823(e) did not ba

Bathgate's counterclaims or "Bathgate otherwise . . . established a genuine issue o

material fact, neither circumstance would bar the FDIC-Receiver from obtaining judg

against Bathgate or from foreclosing on the collateral . . . [because] Bathgate mus

obtain judgment on his unliquidated claims and then seek satisfaction of the judgme

creditor of the failed institution, thereby entitling him to no more than a ratable

distribution of the assets of the failed institution."  See FDIC Br. at 34 (citing

Beighley, 868 F.2d at 784 n.12).  In light of our holdings regarding Bathgate's

counterclaims, we need not reach this issue.

39

C. The Motion For Leave To Amend the Third-Party                    Cl

On September 3, 1992, the Bathgate defendants filed a third-party complai

against the individual directors and officers of the Bank (the "Bank directors") pu

to Fed. R. Civ. P. 14(a), which the district court dismissed by oral order on March

1993. See Bathgate defendants' App. III at 1007-36 (transcript of proceedings). W

the Bathgate defendants have not attempted to appeal from this order, they did file

motion for leave to file an amended third-party complaint. The district court deni

motion, holding that their proposed amendments would be futile. FDIC v. Bathgate e

Civ. No. 91-2779 (consolidated), Memorandum and Order at 5 (D.N.J. July 19, 1993) (

Bathgate defendants' App. III at 1041).

The Bank directors argue that we lack subject matter jurisdiction over th

Bathgate defendants' third-party complaint because it is prohibited by Rules 14(a)

13(h). See Bank directors' Br. at 25-28. In its March 1, 1993 order dismissing th

third-party complaint, the district court cited 28 U.S.C. §1367 as the basis for su

matter jurisdiction over the third-party complaint, and stated that "[a]lthough it

that the Directors are more properly aligned as counterclaim-defendants [pursuant t

13(h)], [than as third-party defendants pursuant to Rule 14(a),] the Court is not

persuaded that Bathgate's claims should be dismissed on this ground." See Bathgate

defendants' App. III at 1028.

Rule 14(a) provides in pertinent part that "a defending party, as a third
plaintiff, may cause a summons and complaint to be served upon a person not a party
action who is or may be liable to the third-party plaintiff for all or part of the
plaintiff's claim against the third-party plaintiff." A third-party claim may be as
under Rule 14(a) only when the third party's liability is in some way dependent on
outcome of the main claim or when the third party is secondarily liable to defendan
the claim is separate or independent from the main action, impleader will be denie

C.A. Wright, A. Miller, M. K. Kane, Federal Practice and Procedure, Vol. 6, § 1446,

355-58 (1990). Thus, we conclude that the Bathgate defendants' pleading against th

directors does not qualify as a third-party complaint under Rule 14(a), because the

directors' liability is not derivative of the Bathgate defendants' liability on the

for which the FDIC is seeking payment.

The Bank directors also maintain that joinder of the Bathgate defendants'

against them was prohibited by Rule 13(h).[0]  Rule 13(h) provides that "persons othe

---

[0]Although Judge Cowen concurs in the judgment dismissing the third-party complaint
the directors, he would not dismiss it on the merits.  He would dismiss it for the
stated in this footnote and without prejudice to any state law causes of action tha
Bathgate defendants may bring against the directors in New Jersey state courts wher
claims belong.

Although Rule 13(h), together with Rules 19 and 20, appears to give the d
court broad power to join additional parties, the better understanding is that, as
in Judge Greenberg's opinion, "Rule 13(h) only authorizes the court to join additio
persons in order to adjudicate a counterclaim or cross-claim that already is before
court or one that is being asserted at the same time the addition of a nonparty is
This means that a counterclaim or cross-claim may not be directed solely against pe
who are not already parties to the original action, but must involve at least one e
party." 6 Wright, Miller & Kane, Federal Practice and Procedure § 1435, at 270-71.
"in order to adjudicate counterclaims" language underscores that the presence of
additional parties is either necessary or close to necessary to the resolution of t
counterclaims.  The claims alleged in the third-party complaint are not "countercla
"cross-claims" as required under Rule 13(h).  Nor are the defendant directors neces
parties "in order to adjudicate [the] counterclaims" that the Bathgate defendants a
against the Bank.

Moreover, 28 U.S.C. § 1367 may not cover the claims alleged in the third-
complaint.  That provision requires that supplemental jurisdiction be exercised ove
certain claims if they "are so related to claims in the action within such original
jurisdiction that they form part of the same case or controversy under Article III
United States Constitution." The claims against the directors are far removed from
original "case" or "controversy" that the Bank brought to collect the debt, and are
analytically separate from the counterclaims that the Bathgate defendants asserted
the Bank.  Although the claims against the directors and the counterclaims against
Bank may arise from the same transaction or common set of facts, Judge Cowen is not
comfortable with holding that the claims alleged in the third-party complaint meet
requirement of being part of the same "case or controversy under Article III," over
the district court exercised original jurisdiction (that is, the bank's action to c
the debt), as § 1367 provides.

Judge Cowen believes the district court should have dismissed the third p
complaint under § 1367(c).  The district court dismissed, without trial, the
counterclaims the Bathgate defendants asserted against the Bank.  The claims agains
directors raise novel and complex issues of state law, which in the view of Judge C
are better adjudicated by New Jersey courts.  Furthermore, the behavior of the dire
was not the normal exercise of business judgment, but bordered on partisan politics

41

those made parties to the original action may be made parties to a counterclaim or

claim in accordance with the provisions of Rules 19 and 20."

> Rule 13(h) only authorizes the court to join additional persons in order to adjudicate a counterclaim or cross-claim that already is before the court or one that is being asserted at the same time the addition of a nonparty is sought.  This means that a counterclaim or cross-claim may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party.

C.A. Wright, A. Miller, M. K. Kane, <u>Federal Practice and Procedure</u>, Vol. 6, § 1435,

270-71.  The counterclaims against the FDIC have been dismissed.  Moreover, at the

the district court denied the Bathgate defendants' motion for leave to amend their

party complaint against the Bank directors, the district court already had granted

judgment in favor of the FDIC on the FDIC's claims against the Bathgate defendants

the Bathgate defendants' counterclaims against the FDIC. However, at the time that

pleading against the Bank directors was filed, the Bathgate defendants' countercla

against the FDIC remained before the district court.  Thus, the Bathgate defendants

properly joined the Bank directors as additional parties to the counterclaim pursua

Rule 13(h), which the district court cited in its order dismissing the counterclaim

---

may persuade the New Jersey courts to provide some remedy.  According to Judge Cowe
these reasons counsel that the district court decline to take jurisdiction over the
alleged in the third-party complaint.

[0]Our conclusion is consistent with our decision in <u>In re Texas Eastern Transmission</u>
<u>PCB. Contamination Ins. Coverage Litig.</u>, 15 F.3d 1230, 1237 n.5 (3d Cir. 1994).  I
case, the defendant argued that the district court did not properly exercise its
discretionary authority to join counterclaim defendants pursuant to Rule 13(h) beca
district court made no reference to Rule 13(h).  The defendant also argued that its
counterclaim was prohibited by Rule 13(h) "inasmuch as under the rule a 'countercla
. may not be directed solely against persons who are not already parties to the ori
action.'" <u>Id.</u> (citing <u>Baltimore & Ohio R. Co.</u> <u>v.</u> <u>Central Ry. Services, Inc.</u>, 636 F.
782, 786 (E.D. Pa. 1986)).  We rejected the defendant's arguments, holding that "th
district court implicitly found in personam jurisdiction" over the additional count
defendants, and that the defendant's counterclaim "was not directed solely against
counterclaim defendants," but was also directed against the plaintiff.  <u>Id.</u>

42

Moreover, in <u>In re Texas Eastern Transmission Corp. PCB. Contamination I</u>

<u>Coverage Litig.</u>, 15 F.3d 1230, 1236-37 (3d Cir. 1994), we held that the district co

"[a]ncillary subject matter jurisdiction . . . over additional party defendants to

compulsory counterclaim, or over third party defendants," and that Congress "confir

principle of ancillary jurisdiction over counterclaim defendants in the enactment o

Judicial Improvements Act of 1990, 28 U.S.C. §1367."  Section 1367 provides in pert

part that district courts "shall have supplemental jurisdiction over all . . . clai

are so related to claims in the action within such original jurisdiction that they

part of the same case or controversy under Article III of the United States Constit

28 U.S.C. § 1367(a).[0]  Thus, we conclude that the district court had subject matter

jurisdiction over the Bathgate defendants' claims against the Bank directors.[0]

As noted above, the district court denied the Bathgate defendants' motion

leave to amend their "third-party" complaint against the Bank directors because it

concluded that their proposed amendments would be futile.  <u>FDIC</u> <u>v.</u> <u>Bathgate et al.,</u>

No. 91-2779 (consolidated), Memorandum and Order at 5 (D.N.J. July 19, 1993) (<u>see</u> B

defendants' App. III at 1041).  Rule 15(a) of the Federal Rules of Civil Procedure

authorizes a party to amend its pleadings "as a matter of course at any time before

responsive pleading is served."  In this case, although no responsive pleading had

filed, the district court concluded that "[r]ather than incur the added expense, de

and inefficiency of permitting the amendment and then considering a motion to dismi

later date, the Court [would] focus[] on the ultimate issue of whether the motion t

should be denied as futile."  <u>FDIC</u> <u>v.</u> <u>Bathgate et al.,</u> Civ. No. 91-2779 (consolidat

Memorandum and Order at 2 (D.N.J. July 19, 1993) (<u>see</u> Bathgate defendants' App. III

---

[0]The Judicial Improvement Act of 1990 became operative on December 1, 1990, before
claims in this case were filed.
[0]We do note however, that district courts "may decline to exercise supplemental
jurisdiction . . . [if] the district court has dismissed all claims over which it h
original jurisdiction."  28 U.S.C. § 1367(c)(3).

43

1038).  The futility of amendment is one of the factors that a trial court may cons

denying a motion to amend.  See Averbach v. Rival Mfg. Co., 879 F.2d 1196, 1203 (3d

1989), cert. denied, 493 U.S. 1023, 110 S.Ct. 726 (1990).  We review the district c

denial of a motion to amend for abuse of discretion.  Id.

The Bathgate defendants argue that the district court erred in denying th

motion for leave to amend their

third-party complaint because the amended complaint stated causes of action for

intentional interference with contractual relations and prospective economic advant

slander of credit and title, violation of the New Jersey Consumer Fraud Act,

misrepresentation, and tortious breach of the duty of good faith. See Bathgate defe

Br. at 34-41.[0]

The district court held that the Bathgate defendants' claims for slander

credit and slander of title failed because they rested on the allegation that the E

directors published false statements indicating that the Bathgate defendants were i

default when it already had held that the Bathgate defendants "in fact, were in def

FDIC v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 3

(D.N.J. July 19, 1993) (see Bathgate defendants' App. III at 1039).  We agree that

light of the district court's holding and our decision to affirm that holding, the

to amend the slander claims remains futile.  Moreover, the Bathgate defendants'

allegations, see Bathgate defendants' App. III at 1198-99, do not satisfy the plead

requirements for defamation claims because they do not identify the alleged defamat

statements or the source of the defamatory statements with sufficient specificity.

Nanavati v. Burdette Tomlin Memorial Hosp., 857 F.2d 96, 109 (3d Cir. 1988) ("a pla

must be required to set forth actionable statements with particularity"), cert. der

---

[0]We apply New Jersey law to determine whether the Bathgate defendants' claims again
Bank directors were futile because both parties briefed the claims under New Jersey
and neither party asserted that federal law or the law of any other state was appli

44

489 U.S. 1078, 109 S.Ct. 1528 (1989); <u>Zoneraich</u> v. <u>Overlook Hosp.</u>, 514 A.2d 53, 63

Super. Ct. App. Div.) ("In the case of a complaint charging defamation, plaintiff m

plead facts sufficient to identify the defamatory words, their utterer and the fact

their publication. . . . A plaintiff may be permitted to bolster a defamation caus

action through discovery, but not to file a conclusory complaint to find out if one

exists."), <u>certif. denied</u>, 526 A.2d 126 (N.J. 1986).

The district court held that the Bank directors could not be liable on th

Bathgate defendants' claims of intentional interference with contractual relations

prospective economic advantage, because the court in <u>Sammon</u> v. <u>Watchung Hills Bank</u>

<u>Sav.</u>, 611 A.2d 674 (N.J. Super. Ct. Law Div. 1992), held that "an employee cannot b

liable for an act that is otherwise a tort when the employee is exercising a privil

the principal." <u>FDIC</u> v. <u>Bathgate et al.</u>, Civ. No. 91-2779 (consolidated), Memorand

Order at 3-4 (D.N.J. July 19, 1993) (<u>see</u> Bathgate defendants' App. III at 1039-40).

district court also based its holding on <u>Printing Mart-Morristown</u> v. <u>Sharp Elecs. C</u>

563 A.2d 31, in which the court declined to decide whether "employees [ever] can be

answerable for interfering with their employer's prospective contractual relationsh

<u>id</u>. at 761, and stated that "[u]ltimate resolution of the question of whether an em

of a party to a prospective economic relationship can be held liable for tortious

interference may require the Court to create a special cause of action against the

employee," <u>id</u>. at 763. <u>FDIC</u> v. <u>Bathgate et al.</u>, Civ. No. 91-2779 (consolidated),

Memorandum and Order at 4 (D.N.J. July 19, 1993) (<u>see</u> Bathgate defendants' App. II

1040).

In this case, the Bathgate defendants allege that the Bank directors were

exercising the Bank's authority with regard to the disposition of Bathgate's notes.

<u>e.g.,</u> Bathgate defendants' App. III at 1170, 1196. Thus, the Bank directors were

exercising a privilege of the principal. Since the Bank "cannot be liable on a cau

action grounded in unlawful interference with prospective economic advantage, fairn

45

would require that [the directors with the authority to act on the Bank's behalf] .

similarly insulated from liability on such a cause of action." Sammon v. Watchung

Bank for Sav., 611 A.2d at 676. Moreover, as the Bank directors point out, the Bat

defendants have not cited any authority indicating that the New Jersey Supreme Cour

created a special cause of action for tortious interference by employees of a party

economic relationship. See Bank directors' Br. at 15. We think it would not recog

such an action, at least not in the circumstances here. Thus, we will affirm the d

court's denial of the motion to amend the Bathgate defendants' tortious interferenc

claims against the Bank directors.

The district court denied the motion to amend the New Jersey Consumer Fra

claim and common law fraud claim because the amended claims failed to satisfy the

particularity requirement of Fed. R. Civ. P. 9(b). FDIC v. Bathgate et al., Civ. N

2779 (consolidated), Memorandum and Order at 5 (D.N.J. July 19, 1993) (see Bathgate

defendants' App. III at 1041). Although the Bathgate defendants asserted that a

fraudulent statement was "made to Bathgate that the closing on the February Commitm

would be deferred beyond April 1, [1991]," they did not assert the identity of the

or speakers. Id. at 4-5 (see Bathgate defendants' App. III at 1040-41); see Sapori

Combustion Eng'g Inc., 843 F.2d 666, 675 (3d Cir. 1988) ("[a]lthough the appellants

complaint does indicate the general content of the [allegedly fraudulent] represent

. . . , it does not indicate who the speakers were . . . or who received the

information"), vacated on other grounds, 489 U.S. 1049, 109 S.Ct. 1306 (1989). Mor

"there is no reason to believe that additional information is in the exclusive cont

[the third-party defendants]." Saporito v. Combustion Eng'g Inc., 843 F.2d at 675.

It is true that "in the case of corporate fraud, plaintiffs cannot be exp

to have personal knowledge of the details of corporate internal affairs." Craftmat

Litig. v. Kraftsow, 890 F.2d 628, 645 (3d Cir. 1989). However, the Bathgate defend

assert individual fraud by the Bank directors. Furthermore, in Craftmatic, we stat

46

"even under a non-restrictive application of the rule [9(b)], pleaders must allege that the necessary information lies within defendants' control, and their allegations mu[st] accompanied by a statement of facts upon which the allegations are based." Craftmat[ic], F.2d at 645. In other words, "plaintiffs must accompany their allegations with fac[ts] indicating why the charges against defendants are not baseless and why additional information lies exclusively within defendants' control." Id. at 646. The Bathgat[e] defendants did not allege expressly that the necessary information lies within the party defendants' control nor did they provide a statement of facts indicating why charges against the Bank directors are not baseless and why additional information exclusively within the Bank directors' control. See Bathgate defendants' App. III 1201-03. Thus, we will affirm the district court's decision to deny the motion to the claims alleging fraud.

Finally, the district court held that the Bathgate defendants' amendment claim for breach of the duty of good faith would be futile because "in a lender-bor[rower] relationship, there is no independent duty beyond that parties' contractual duties, v. Bathgate et al., Civ. No. 91-2779 (consolidated), Memorandum and Order at 5 (D.N[.J.] July 19, 1993) (see Bathgate defendants' App. III at 1041) (citing Washington Steel v. TW Corp., 602 F.2d 594, 599-601 (3d Cir. 1979), overruled on other grounds by C[?] K-Mart Corp., 979 F.2d 965, 967 n.4 (3d Cir. 1992)), and "'remedies in tort relati[ng] breach of contract may not be maintained in addition to those established under the contract itself in the absence of any independent duty owed by the breaching party plaintiff,'" id. (quoting International Minerals & Mining Corp. v. Citicorp North A[merica], Inc., 736 F. Supp. 587, 597 (D.N.J. 1990)). We do not reach these issues because, Bank directors point out, "[e]ven assuming [the Bank] did owe Bathgate some added d[uty of] good faith, [the Bathgate defendants] fail to cite a single case for the propositi[on] non-parties to a contract can be held liable for a breach of a contractual duty of faith and fair dealing," and we believe that the New Jersey Supreme Court would not

47

recognize such a claim, at least in the circumstances of this case. <u>See</u> Bank direc

Br. at 25.[0]  We will affirm the district court's holding with regard to the breach

of good faith claim on this basis.  Thus, we will affirm in its entirety the distri

court's order denying the Bathgate defendants' motion for leave to amend their comp

against the Bank directors.

III. CONCLUSION

In reaching our result we have not overlooked that the <u>D'Oench Duhme</u> doct

and section 1823(e) can lead to what might be considered a harsh result.  Neverthe

seems to us that the federal precedents and the applicable New Jersey law have comp

our outcome.  Consequently, the orders of the district court of March 18, 1993, and

19, 1993, will be affirmed.

---

[0]The Bank Directors also allege that the Bathgate defendants other than Bathgate ha
standing to sue the Bank directors as third-party beneficiaries of the agreement al
reflected in the February letter.  In light of our disposition of the Bathgate defe
claims against the Bank directors, we need not reach this issue.

48